CAMPBELL v. GLEN BROS.-ROBERTS PIANO CO.

No. 5053.   Decided August 30, 1935.   (48 P. [2d] 556.)

*Thatcher & Young,* of Ogden, for appellant.

*Delbert M. Draper,* of Salt Lake City, for respondent.

TURNER, District Judge.

This is an action brought by R. E. Campbell against Glen Bros.-Roberts Piano Company, a corporation, to recover judgment for $700 for breach of contract. The Piano Company, appellant herein, filed a counterclaim and as a basis of such claim referred to the same written instrument re-

lied upon by said Campbell in his complaint. The Company, by its pleading, alleges that Campbell breached the contract, by reason of which the company should recover judgment against Campbell for $2,250, attorney's fees and costs, and that such judgment should be a lien against a certain Chickering Grand Ampico piano, which was the piano mentioned in the written instrument entered into by both parties.

In his reply to the counterclaim, Campbell denies that he, on or about August, 1928, ordered delivery of the Chickering Grand piano, and alleges that he had been informed by the company, before the beginning of the year 1928, that the company had disposed of the Ampico piano. Campbell admits that he has refused to pay the company the sum of $500 or the sum of $2,250, or any other sum, arising out of the written instrument relied upon by the parties and referred to in this opinion as the contract. Respondent denies all other affirmative matters set forth in the counterclaim.

The lower court found the issues in favor of the plaintiff, R. E. Campbell, and gave him judgment for $350, the reasonable value of the Apollo player piano delivered to the company on or about the time the contract was executed by the parties, from which judgment the company appeals.

The evidence discloses without conflict that R. E. Campbell and Glen Bros.-Roberts Piano Company made and executed a certain writing which was admitted as Plaintiff's Exhibit One. This instrument in general form is similar to sales contract in general use, and most of the regular and formal provisions have no bearing on this case and so are omitted. The following parts of the written instrument are the provisions with which we are concerned:

"Salt Lake City,<br>
"Ogden City, Utah May 9, 1924

$2450.00                                    Contract No. E13425

"Glen Bros-Roberts Piano Co., of Ogden, Utah hereby agrees to sell to R. E. Campbell, the undersigned subscriber, of Salt Lake City, and the said subscriber agrees to buy from said Company Chickering

Grand Ampico Style 52 Mah. No. 136855, hereinafter designated as merchandise, and to pay therefore to said Company, or order, at its office in Ogden Utah, or Salt Lake City, Utah, Two Thousand Nine Hundred Fifty and no/100 dallors, payable One Melville Clark Appollo player at $700.00 down, then $500.00 cash, when piano is ordered delivered, balance to be paid in six months after delivery in six equal installments, with interest thereon at the rate of 8 per cent per annum from date of delivery. . . .

"When this contract is fully paid, then title to said merchandise shall pass to said subscriber free from any claim of this company.

"This contract shall not be binding upon the company until accepted by an officer of the company.
"Accepted:
    "Glen Bros-Roberts Piano Co.,
    "By Geo. S. Glen.

"Customer's Signature: R. E. Campbell. (At this point in the printed form of contract certain blank spaces appear which are irrelevant to the case filed herein.)

"Remarks: It is agreed that if Mr. Campbell pays in full by January 1st. 1925, $100.00 cash discount is to be allowed; we are to hold piano in storage and insure same against loss by fire at our expense, above purchase agreement not in force until Mr. Campbell orders delivery.

    "Geo. S. Glen.

"If Mr. Campbell moves to California by December 1st 1924, we agree to pack and ship piano at our expense to Long Beach, California.
    "Geo. S. Glen."

On or about the time this instrument was signed by the said parties, the Melville Clark Apollo player was taken by the company and soon thereafter was disposed of.

The testimony of the plaintiff is that some time in the latter part of 1925 or the early part of 1926, he called at the company's place of business in Salt Lake City for the purpose of ordering delivery of the Ampico piano. He testified that he asked to see the piano and had the money available to make the payment of $500. The evidence discloses that said Campbell talked with some employee of the company and was told the piano bad been sold; that they did not have that particular piano, but would give him another one

like it. This is denied by the company, but testimony of the company's witness Mr. McCallum is that he, as a company salesman, first talked with Mr. Campbell at the Salt Lake City place of business in 1925 or 1926. The evidence of both parties is that in 1927 and 1928, Mr. Campbell came to the company's place of business and talked with divers employees about taking other merchandise in place of the Ampico piano. Finally, Mr. Campbell placed his matter in the hands of an attorney, and thereafter a rather smart correspondence was engaged in, as is evidenced by the letters and copies admitted as evidence in the case. Then this action was commenced in the district court, with judgment as heretofore mentioned.

The appellant, the Company, in its brief contends that the trial court erred in five particulars, to wit: (1) That the court erred in permitting the plaintiff to testify of conversations with employees of the defendant in which it was stated the Ampico had been sold. (2) That it erred in finding that in the latter part of 1925 or some time in 1926, the defendant, through its agents, informed the plaintiff that the Ampico had been sold. (3) That it erred in finding that not until August, 1928, did defendant disclose that it still had the identical Ampico in its possession, and that prior to that date both plaintiff and defendant assumed the instrument had been sold. (4) That it erred in failing to find that the defendant held the Ampico for the plaintiff for the full period of a reasonable time, to enable the plaintiff to order delivery. (5) That it erred in entering judgment against the defendant.

The company, in the trial of the case, claimed that Mr. Campbell had ordered delivery of the Ampico and therefore the written agreement or contract was binding upon him. However, the company does not contend that the written instrument or agreement was a binding sales contract, calling for performance by Campbell, unless ■ Campbell had ordered delivery. By the words added in writing to the regular printed matter of the instrument,

to wit, "Above purchase agreement not in force until Mr. Campbell orders delivery," it is apparent that this instrument would not be binding upon Mr. Campbell as a sale contract until Mr. Campbell ordered delivery. The lower court found that Mr. Campbell did not order delivery, and the company has not questioned that finding in any way other than that judgment should not have been given to the plaintiff. This, therefore, disposes of the question of the written instrument being a binding sales contract.

The first two assignments of error go to the admission of evidence and the finding of the court based upon the evidence which the company objected to. The appellant contends that the statements claimed made to Mr. Campbell, if made by an employee, to the effect that the Ampico had been sold, would be hearsay. We do not agree with counsel in this contention. Mr. Campbell at all times had been dealing with employees who stood in the same relationship to the company as the person or persons with whom Mr. Campbell claimed he spoke in the years 1925 and 1926. However, that matter is of little moment in the decision of this case and cannot be ground for reversal.

The record shows that the appellant in November, 1926, shipped the Ampico from Salt Lake City to Idaho, where it was placed on exhibition, and that it was later shipped to Ogden, Utah, for display. It was used as a demonstrator. The evidence also discloses that the piano, when out of Salt Lake City, was covered only by blanket insurance. The shipping of the Ampico from the Salt Lake City store of the company to Idaho and placing it on exhibition was a breach of the company's obligation, unless, prior to such time, the company was released of any obligation to Mr. Campbell. The failure to keep the piano fully and properly insured is of similar effect.

That the company, at the time the written instrument was signed by the parties, took an Apollo player from Mr.

Campbell is admitted. Consequently the company in some way was obligated to Mr. Campbell. It necessarily was obliged to perform according to the terms of the agreement, or to treat the instrument as an option agreement or to take the position of a bailee.

The company by its pleadings took the position that the written instrument was a binding sales contract. It claimed that Mr. Campbell had ordered delivery of the Ampico piano and therefore was obligated to pay the balance of the purchase price. Such is the only position the company could consistently have taken, because, up until the commencement of this action, the company was doing everything possible to place Mr. Campbell in a position where he would be compelled to pay the purchase price of the Ampico piano. The Apollo player was disposed of soon after it went into the hands of the company. Having disposed of the Apollo player so soon, the company could not claim that it was a bailee. The only position left for the company to take is that the agreement between the parties was an option agreement and that the company had done everything required of it to be done, and that as Campbell had failed to order delivery of the Ampico within a reasonable time he forfeited the Apollo player which he had placed in the hands of the company.

If the company was justified in taking this position and could consistently contend it had done all things required of it to be done, under this theory, the court would be confronted with some very interesting queries. But the company did not see fit to make such contentions in its pleadings, and naturally did not do so, for at no time was the company content to treat the written instrument as a mere option agreement. The company was not content to declare the purchase agreement off and declare the Apollo player forfeited. The company was continuously pumping life into its contract, whatever it was, in an endeavor to place Mr. Campbell in a position where he would be compelled to pay the purchase price of the Ampico piano.

This apparently was the only thought of the company employees for a period of eighteen months prior to the commencement of this action.

The company, by reason of its behavior and the position taken in the trial of this cause, cannot now justly ask the court to find that it held the Ampico a reasonable length of time and did all things necessary to justify it in claiming the Apollo player forfeited to it because Mr. Campbell did not order delivery of the piano. The court below properly refused to find what was a reasonable time to hold the piano, as this question was not one material to the issues raised in the trial of the case.

It is easy to understand that Mr. Campbell was convinced the company did not have the Ampico piano mentioned in the written instrument. In 1925 or 1926, when Mr. Campbell called at the company's place of business in Salt Lake City and inquired about the piano, he was never shown the piano. It is difficult to understand why the employees of the company did not take Mr. Campbell in to see and hear the Ampico when he called, if they had the piano there at the time. The natural way to create a desire for such an article of beauty is by sight and sound. Such instruments are sold that way and almost in no other way. The only reasonable conclusion permissible in this matter, disregarding the statements claimed to have been made by the employees, is that the company either did not have the piano on hand or purposely hoped to trick Mr. Campbell into a false belief, thinking that thereby the company could work him into a position where he would be compelled to pay the purchase price of the Ampico.

The company never treated this instrument as an option. Without declaring any forfeiture of the Apollo, it shipped the Ampico out of the state. It failed to keep the piano insured as it should under the terms of the agreement. The company used it for display purposes. They made it a used instrument. The court was warranted in finding the fault to be that of the company.

The record sustains the lower court's findings on every material matter. The judgment is just and proper and, therefore, should be and accordingly is affirmed. Costs to respondent.

ELIAS HANSEN, C. J., FOLLAND and EPHRAIM HANSON, JJ., and R. I. McDONOUGH, District Judge, concur.

MOFFAT and WOLFE, JJ., being disqualified, did not participate herein.